IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |
|---|---|
| HERBERT CORE DRILL, LLC, et al. | : |
|   | : |
| v. | : Civil Action No. DKC 24-169 |
|   | : |
| BROTHERS MECHANICAL, INC. | : |
|   | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of contract, fraud, and employment law case is the motion to dismiss certain counts and claims filed by Defendant Brothers Mechanical, Inc. ("Brothers"). (ECF No. 32). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted in part and denied in part.

**I.    Background**

**A.    Factual Background[1]**

In 2016, Herbert Hector ("Mr. Hector") founded Herbert Core Drill, LLC ("HCD"). HCD specializes in "core drilling," which "involves the use of specialized drilling machines to bore holes through concrete." (ECF No. 31, ¶ 7). HCD provides core drilling services to mechanical/heating, ventilation, and air conditioning

---

[1] The following facts are set forth in the second amended complaint (ECF No. 31) and construed in the light most favorable to the Plaintiffs.

("HVAC") contractors in Washington, D.C., Maryland, and Virginia. HCD employs its founder, Mr. Hector. Brothers is a mechanical/HVAC and plumbing contractor servicing Washington, D.C., Maryland, and Virginia.

From 2016 to 2022, Brothers contracted with HCD to perform core drilling work on various projects. In this arrangement, HCD would be requested to perform core drilling services, HCD would provide an invoice for the services, HCD would perform the services, and then Brothers would pay the invoices for the services. For each of these invoices, Brothers maintained a "hold-back" of 10% of the total invoice amount without justification. Brothers was paid by its customers for each of the projects on which HCD performed. Each of the projects was completed and the work was performed as agreed.

To date, Brothers has not paid eleven invoices, totaling $65,458.00. To date, Brothers has withheld 10% "hold-backs" for invoices, totaling $84,717.87. As a result of Brothers' non-payment, HCD was unable to pay Mr. Hector for his work.

**B.   Procedural Background**

Mr. Hector and HCD (together "Plaintiffs") filed an initial complaint against Brothers on January 17, 2024 (ECF No. 1), and an amended complaint on January 30, 2024 (ECF No. 11). On March 22, 2024, Plaintiffs filed an unopposed motion for leave to file a second amended complaint (ECF No. 28), which was granted on March

2

28, 2024 (ECF No. 30).  The second amended complaint was docketed on March 28, 2024 (ECF No. 31), and Brothers filed a motion to dismiss on April 10, 2024 (ECF No. 32).  On April 24, 2024, Plaintiffs filed an opposition to Brothers' motion to dismiss (ECF No. 33), and Brothers filed a reply on May 7, 2024 (ECF No. 34).

## II.  Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  "[T]he district court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor."  *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).  A plaintiff's complaint must only satisfy the standard of Rule 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed.R.Civ.P. 8(a)(2)).  A Rule 8(a)(2) "showing" requires "stat[ing] a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged."

3

*Mays*, 992 F.3d at 299-300 (quoting *Iqbal*, 556 U.S. at 663).  Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4ᵗʰ Cir. 1979).

## III. Analysis

### A.   Count IV: Fraud

In Count IV, Plaintiffs assert a fraud claim against Brothers. (ECF No. 31, 58-70).  Plaintiffs allege that Brothers and HCD entered into several contracts and that "Brothers promised to pay all monies to [HCD] . . . upon completion of work." (ECF No. 31, ¶ 62).  In response, Brothers argues that: (1) under Maryland law, a breach of contract does not give rise to a fraud claim, rather "there must be an independent duty other than that arising out of the contract" (ECF No. 32-1, at 6); (2) HCD is barred from recovery in tort because the claimed damages are only economic in nature; and (3) HCD's fraud claim does not comply with Fed.R.Civ.P. 9(b). (ECF No. 32-1, at 5-8).

In Maryland the elements are fraud are:

> (1) the defendant[s] made a false statement of fact; (2) the defendant[s] knew the statement was false or acted with reckless disregard for the truth of the statement; (3) the defendant[s] made the statement for the purpose of defrauding the plaintiff [s]; (4) the plaintiff[s] reasonably relied on the false statement, and (5) the plaintiff[s] w[ere] damaged as a result.

*Marchese v. JPMorgan Chase Bank, N.A.*, 917 F.Supp.2d 452, 465 (D.Md. 2013) (quoting *Thompson v. Countrywide Home Loans Servicing, L.P.*, No. 09-2549-L, 2010 WL 1741398, at *3 (D.Md. Apr. 27, 2010) (citing *Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 333 (1982))).

"Where a controversy concerns purely economic losses allegedly caused by statements made during the course of a contractual relationship between businessmen, contract law – not tort law – provides the rule of decision by which the case is to be governed." *Architectural Sys. v. Gilbane Bldg. Co.*, 779 F. Supp. 820, 822 (D.Md. 1991) (citing *Flow Indus., Inc. v. Fields Constr. Co.*, 683 F.Supp. 527, 529 (D. Md. 1988)). "Mere negligent breach of contract is not enough to sustain an action sounding in tort." *Id.* "It is only when a breach of contract is also a violation of a duty imposed by law that the injured party has a choice of remedies." *Heckrotte v. Riddle*, 224 Md. 591, 595 (1961).

Plaintiffs assert that their fraud claim is based on (1) Brothers' "fraudulent inducement to contract" and (2) Brothers' "intent to not perform a contract[.]" (ECF No. 33, at 6). Plaintiffs allege that Brothers' promise to pay on the contract was made "with the intention not to fully perform." (ECF No. 33, at 7).

A promise made with the current intent not to perform may give rise a claim for fraudulent misrepresentation. *See Summit*

5

*DNA, L.L.C. v. Proove Biosciences, Inc.*, No. 14-1329-WDQ, 2015 WL 3901973, at *8 (D.Md. June 23, 2015); *see also Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 197 (1995) ("[D]efendant's deliberate misrepresentation of his existing intentions . . . may form the basis for an action in fraud[.]). However, the second amended complaint contains no facts supporting this allegation. *See Kwang Dong Pharm. Co. v. Han*, 205 F.Supp.2d 489, 495 (2002) (dismissing fraudulent misrepresentation claim because the counterclaims did not contain "anything more than [an] assertion that [counter-defendant] had no intention of honoring the contracts at the time they were entered."); *see also Sims v. Ryland Group, Inc.*, 37 Md.App. 470, 473 (1977) ("[A] bald allegation of fraud with no supporting facts. . . . [I]s insufficient to state a cause of action.). In addition, claims of fraud must be pleaded with particularity under Fed.R.Civ.P. 9(b). ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"). Plaintiffs have failed to allege any specific facts, making only general assertions that Brothers never intended to honor the contracts it signed with HCD. Accordingly, Count IV will be dismissed.

### B.   Counts V, VI, and VII.

In Counts V, VI, and VII, Plaintiffs assert wage claims under the Maryland Wage Payment and Collection Law ("MWPCL"), the

District of Columbia Wage Payment and Collection Law ("DCWPCL"), and the Fair Labor Standards Act ("FLSA"). Brothers argues that Plaintiffs' wage claims should be dismissed for two reasons: (1) HCD does not have "standing" to assert a wage claim,[2] and (2) Plaintiffs fail to show the existence of joint employment between Brothers and HCD. (ECF No. 32-1, at 8-12).

### 1. "Employee" Under MWPCL

An employee may bring a civil action to recover unpaid wages from an employer who wrongly withholds wages in violation of the MWPCL. Md. Code, Lab. & Empl. § 3-501 (a).

> The MWPCL is a statutory cause of action, the purpose of which is 'to provide a vehicle for employees to collect, and an incentive for employers to pay, back wages.'" *Cunningham*, 107 A.3d at 1202 (quoting *Battaglia v. Clinical Perfusionists, Inc.*, 338 Md. 352, 658 A.2d 680, 686 (1995)). As relevant here, it provides that "each employer shall pay an employee ... all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." Md. Code Ann., Lab. & Empl. § 3-505(a). It defines an employer as "any person who employs an individual in the State." *Id.* § 3-501(b). Although the MWPCL does not define the term employee, the term "[e]mploy" is defined elsewhere in the same title of the Labor and Employment article of the Maryland Code as "to engage an individual to work," including

---

[2] "Standing" issues include constitutional, prudential, and statutory standing. The first two of those are analyzed under Fed.R.Civ.P. 12(b)(1). *See CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011). Here the issue is of the third type, whether HCD can state a cause of action, *i.e.*, was it an employee.

> "allowing an individual to work" and
> "instructing an individual to be present at a
> work site." *Id*. § 3-101(c). The MWPCL provides
> employees a private right of action to seek
> unpaid wages from their employers . . . .

*Roley v. Nat'l Pro. Exch., Inc*., 474 F.Supp.3d 708, 718 (D.Md. 2020). Section 3-507.2(a) provides that an "employee may bring an action against the employer to recover [] unpaid wages." HCD relies on later subsections, (c)(2) and (3), provisions for general contractors dealing in construction services, which reads in relevant part:

> (2) In an action brought under subsection (a)
> of this section, a general contractor on a
> project for construction services is jointly
> and severally liable for a violation of this
> subtitle that is committed by a subcontractor,
> regardless of whether the subcontractor is in
> a direct contractual relationship with the
> general contractor.
>
> (3) A subcontractor shall indemnify a general
> contractor for any wages, damages, interest,
> penalties, or attorney's fees owed as a result
> of the subcontractor's violation unless:
>
>   (i) indemnification is provided for in a
> contract between the general contractor and
> the subcontractor; or
>
>   (ii) a violation of the subtitle arose due
> to a lack of prompt payment in accordance with
> the terms of the contract between the general
> contractor and the subcontractor.

Md. Lab. & Empl. § 3-507.2(c).

Brothers argues HCD does not have "standing" to bring suit under the MWPCL because the MWCPL creates a cause of action for individuals, not for subcontractor entities. (ECF No. 32-1, at

8

8).   In response, Plaintiffs assert that the statute does not "explicitly limit standing to an employee" and that "HCD has standing to bring an action under the wage code 'due to a lack of prompt payment in accordance with the terms of the contract between [Brothers] and HCD.'"   (ECF No. 33, at 8).   Plaintiffs cite to another case, *Aguilar v. David E. Harvey Builders, Inc.*, No. 18-cv-03953-PX, 2022 WL 834173 (D.Md. Mar. 21, 2022), but not to any opinion or decision applying section 3-507.2(c)(3) in the fashion asserted here.   In *Aguilar*, indemnification was premised on the contract between the contractor and the sub-contractor, and not on the Maryland statute.

HCD is simply incorrect that the statute somehow is imprecise as to who can sue.   Only an "employee" can bring an action.   HCD is not an employee.   Section 3-507.2(c) imposes joint and several liability on a general contractor and a subcontractor for violations of the MWPCL.   That means that, if Mr. Hector has a claim for unpaid wages by his immediate employer, HCD, then Brothers might also be liable.

Nor does section 3.507(c)(3), that requires a subcontractor to indemnify a general contractor for "any wages, damages, interest, penalties, or attorney's fees" owed due to a subcontractor's breach of the MWPCL, save this claim.   HCD asserts it has "standing" under section 3-507(c)(3)(ii) because it is attempting to recover for Brothers' violation of the MWPCL that

allegedly occurred because of Brothers' failure to make prompt payment in accordance with the contract (ECF No. 33, at 8). This is not the purpose of the statute. Section 3-507(c)(3)(ii) is an exception to a subcontractor's duty to indemnify a general contractor. If Mr. Hector succeeds in his claims against Brothers, HCD may be able to raise a defense under section 3-507(c)(3)(ii) should Brothers seek indemnification. However, HCD does not have an independent cause of action under the statute. Accordingly, HCD's claims under Count V will be dismissed.

### 2.  Employee Under DCWPCL

The DCWPCL has a similar indemnification provision:

> (c)  A subcontractor, including any intermediate subcontractor, and the general contractor shall be jointly and severally liable to the subcontractor's employees for the subcontractor's violations of this subchapter. Except as otherwise provided in a contract between the subcontractor and the general contractor, the subcontractor shall indemnify the general contractor for any wages, damages, interest, penalties, or attorneys' fees owed as a result of the subcontractor's violations of this subchapter, unless those violations were due to the lack of prompt payment in accordance with the terms of the contract between the general contractor and the subcontractor.

D.C. Code § 32-1012(c). Accordingly, for the same reasons HCD may not sue under the MWPCL, HCD may not sue under the DCWPCL and HCD's claims under Count VI will be dismissed.

### 3.    Employee Under FLSA

In Count VII[3] of the second amended complaint, Plaintiffs each allege that Brothers is "joint[ly] and severally liable for wage violations as . . . a joint employer for the purposes of the FLSA." (ECF No. 31 ¶ 100).  Brothers contends that HCD lacks "standing" under the FLSA because "standing" is limited to an employee, not subcontractor entities.  (ECF No. 32, at 8).

Under the FLSA, "an employer must pay an employee an hourly wage no less than the federal minimum wage."  *Butler v. PP & G, Inc.*, No. 13-430-WMN, 2013 WL 5964476, *6 (D.Md. Nov. 7, 2013) (citing 29 U.S.C. § 206(a)(1)).  Plaintiffs assert that HCD may bring this claim against Brothers and cites *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125 (4th Cir. 2017), in support.  (ECF No. 33, at 10).  In *Salinas*, the United States Court of Appeals for the Fourth Circuit contemplated a contractor's liability to the employee of a subcontractor under the FLSA and held that:

> when—as here—a general contractor contracts work out to a subcontractor that directly employs workers, the general contractor will face no FLSA liability so long as it either (1) disassociates itself from the subcontractor with regard to the key terms and conditions of the workers' employment or (2) ensures that the contractor "cover[s] the workers' legal entitlements" under the FLSA.

---

[3] The second amended complaint lists the both the DWCPL and FLSA counts as "Count VI" (ECF No. 31, at 10-11).  Because the FLSA count is the latter of the two, it will be referred to as Count VII.

*Id.* at 149 (citing *Reyes v. Remington Hybrid Seed Co., Inc.*, 495 F.3d. 403, 409 (7th Cir. 2007)).  Put simply, a contractor may be liable to a subcontractor's employee under the FLSA, but the holding in *Salinas* does not suggest that the FLSA grants a separate cause of action by a subcontractor against the contractor.  *See Salinas*, 848 F.3d at 149 (finding that plaintiffs had a cause of action under the FLSA against the defendant contractor because the contractor and subcontractor were joint employers).

Accordingly, because the FLSA does not grant HCD an independent cause of action, the portion of Count VII brought by HCD against Brothers will be dismissed.

### 4.    Joint Employment

Brothers asserts that Mr. Herbert has failed to state a wage claim under the MWPCL, DCWPCL, or the FLSA, because "the [second amended] Complaint fails to show the existence of a joint employment between [Brothers] and HCD."  (ECF No. 32-1, at 9). Mr. Herbert responds that he properly pleaded a joint employer relationship and therefore has properly pleaded wage claims against Brothers under the three statutes.  (ECF No. 33, at 10).

Mr. Herbert's claims under the MWPCL and the DCWPCL run parallel to his claims under the FLSA, and therefore an analysis under the federal law will extend to the state law claims.  *See McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 240 (4th Cir. 2016) (applying FLSA analysis to plaintiffs' claims under MWPCL);

*Moreno v. A. Wash. & Assocs.*, 2020 D.C.Super. Lexis 19, at *45 (June 17, 2020) (applying the test articulated by the Fourth Circuit in *Salinas* to a joint employment issue under the DCWPCL).

This court has previously explained:

> To state a claim for failure to compensate under the FLSA, the plaintiff must allege facts that, if proven, would be sufficient to establish the existence of an employer-employee relationship. *See Benshoff v. City of Va. Beach*, 180 F.3d 136, 140 (4th Cir. 1999). Because the purpose of the Act is "'remedial and humanitarian,'" it is "interpreted broadly so as to effectuate its goals" of "'protect[ing] the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others.'" *Quinteros v. Sparkle Cleaning, Inc.*, 532 F.Supp.2d 762, 768 (D.Md. 2008) (quoting *Benshoff*, 180 F.3d at 140). To that end, it "'contains its own definitions, comprehensive enough to require its application to many persons and working relationships, which prior to this Act, were not deemed to fall within an employer-employee category.'" *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947) (quoting *Walling v. Portland Terminal Co.*, 330 U.S. 148, 150–51, 67 S.Ct. 639, 91 L.Ed. 809 (1947)). The Act defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S .C. § 203(d). An "employee," in turn, is defined as "any individual employed by an employer," *id.* at § 203(e)(1), and "employ" means "to suffer or permit to work," *id.* at § 203(g). Consistent with these broad definitions, "[t]he Supreme Court has instructed courts to construe the terms 'employer' and 'employee' expansively under the FLSA." *See Quinteros*, 532 F.Supp.2d at 768 (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992); *Rutherford Food Corp.*, 331 U.S. at 730)).

13

*Deras v. Verizon Md., Inc.*, No. 09-0791-DKC, 2010 WL 3038812, at *4 (D.Md. July 30, 2010).

"Separate persons or entities that share control over an individual worker may be deemed joint employers under the FLSA." *Schultz v. Cap. Int'l Soc., Inc.*, 466 F.3d 298, 305 (4th Cir. 2006). Pursuant to 29 C.F.R. § 791.2(b):

> Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
>
> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees;
>
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

(footnotes omitted).

To determine whether a joint employment relationship exits, the court must "'take[ ] into account the real economic relationship between the employer who uses and benefits from the services of workers and the party that hires or assigns the workers to that employer,'" *Schultz*, 466 F.3d at 306 (quoting *Ansoumana v.*

*Gristede's Operating Corp.*, 255 F.Supp.2d 184, 193 (S.D.N.Y. 2003)), and base its decision upon the "'the circumstances of the whole activity[.]'" *Schultz*, 466 F.3d at 306.

In *Schultz*, the Fourth Circuit vacated and remanded the district court's entry of judgment in favor of defendant employers, holding that "[t]he undisputed facts compel the legal conclusion that [the defendant contractor and its principal] were joint employers and that the [plaintiffs] were their employees for purposes of the FLSA." *Schultz*, 466 F.3d at 301. The court found that that case "fit readily within the third example of joint employment listed in the regulation," but explained that where the examples do not directly apply, courts should "consider factors such as those listed in *Bonnette* [*v. Calif. Health & Welfare Agency*, 704 F.2d 1465, 1469-70 (9th Cir. 1983)], and *Zheng v. Liberty Apparel Co., Inc.*, 355 F.3d 61, 71-72 (2$^{d}$ Cir. 2003), in determining whether there are joint employers within the meaning of the Act and the regulation." *Schultz*, 466 F.3d at 306, n.2.

In arguing that it cannot be considered Mr. Hector's joint employer, and thus cannot be liable under the FLSA, MDWCL, or DCWPL, Brothers urges the court to employ the six-factor test articulated in *Salinas*, 848 F.3d 141-142, and consider:

> (1) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means;

(2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;

(3) The degree of permanency and duration of the relationship between the putative joint employers;

(4) Whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;

(5) Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and

(6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

(ECF No. 32, at 10) (quoting *Salinas*, 848 F.3d 141-142). The court need not do so, however, because the instant case appears to fall squarely within the third example provided by the implementing regulation based on the facts alleged. *See Deras*, 2010 WL 3038812, at *5.

Mr. Hector alleges that he and HCD were hired by Brothers for the sole purpose of providing core drilling services on various projects, that Mr. Hector was supervised by Brothers' project managers at each job site, and that Mr. Hector was not allowed to perform core drilling services until directed and authorized by a

Brothers' project manager. (ECF No. 1 ¶¶ 12-13, 17). Moreover, Mr. Hector alleges that before he was allowed to work, Brothers mandated that Mr. Hector attend training. (ECF No. 1 ¶ 18). Under these facts, Brothers was "not completely disassociated" with respect to Mr. Hector's employment and could be "deemed to share control" over Mr. Hector, either directly or indirectly.

Further, Brothers relies heavily on the *Salinas* factors and argues that "[t]hese prongs do not support a finding of joint employment" (ECF No. 32, at 12). An in-depth analysis of the *Salinas* factors is inappropriate at the motion to dismiss stage. *See Salinas*, 848 F.3d at 145 (resolving the issue of joint employment based on "the undisputed facts in the record.").

Accordingly, Mr. Hector has stated a plausible claim that Brothers was Mr. Hector's joint employer under the MWPCL, DCWPCL, and FLSA and therefore Brothers' motion to dismiss Counts V, VI, and VII is denied as it relates to Mr. Hector's claims.

### C.  Punitive Damages

Brothers argues that Plaintiffs fail to state a claim for punitive damages under any count of the second amended complaint.[4] (ECF No. 32-1, at 12-13). Plaintiffs only respond that their allegation that Brothers "intentionally held back 10%" of payments

---

[4] Although Brothers seems to contest the availability of punitive damages under any count of the second amended complaint, it only discusses Counts I-IV. (ECF No. 32-1, at 12-13).

due creates a plausible inference that Brothers was knowingly stealing from Plaintiffs. (ECF No. 33, at 14).

### 1. Counts I-III

Plaintiffs do not challenge Brothers' assertion that there is no basis for punitive damages under Count I (breach of contract), Count II (unjust enrichment), or Count III (quantum meruit).

Maryland courts have "made clear well before 1976 and has consistently maintained since then, that punitive damages are not recoverable by anyone in a breach of contract action." *Balt. Cnty. v. RTKL Assocs. Inc.*, 380 Md. 670, 666-67 (2004) (citing *St. Paul at Chase v. Mfrs. Life Insur.*, 262 Md. 192, 236, *cert. denied*, 404 U.S. 857 (1971); *see also Siegman v. Equitable Trust Co.*, 267 Md. 309, 313 (1972) ("It is well settled in this State that there can be no award of punitive damages in a pure action for breach of contract."); *Bowden v. Caldor*, 350 Md. 4, 22 (1998) ("Under Maryland law, punitive damages are allowable only in tort actions."). Accordingly, the claims for punitive damages under Counts I-III will be dismissed.

### 2. Count IV

Because Count IV of the second amended complaint has been dismissed for failure to state a claim, Brothers' request to dismiss the claim for punitive damages under Count IV is moot.

D.    **Time Barred Claims**

According to Brothers, several of Plaintiffs' claims are time barred and should be dismissed. (ECF No. 32-1, at 14-15). Specifically, Brothers argues that: (1) the claims under Counts I-IV that predate January 17, 2021, are time barred; (2) the claims under Counts V and VI are time barred to the extent they accrued outside the three-year statute of limitations; and (3) Count VII is time barred entirely because the two-year statute of limitations has lapsed. (ECF No. 32, at 14-15). Plaintiffs do not contest that several claims are untimely. Plaintiffs instead argue that the wage claims under Counts V and VI cannot be considered time barred because "Plaintiffs may still use the invoices in 2018 and 2019 as 'prior acts as background evidence to support [their] timely claim[s]'" under the appropriate state wage laws. (ECF No. 33, at 15). Plaintiffs further contend that Count VII is not time barred because Brothers' conduct was "willful" and therefore a three-year statute of limitations applies. (ECF No. 33, at 15).

In general, the statute of limitations is an affirmative defense that must be pleaded and proved by a defendant, and is ordinarily not reached on a motion to dismiss. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). If, however, all facts necessary to the affirmative defense appear on the face of the complaint, it may be resolved on a motion to dismiss. *See id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d

19

244, 250 (4th Cir. 1993)).    To the extent that the facts are undisputed, the issue can be addressed.    Those facts that are disputed, however, cannot support the affirmative defense at this stage of the litigation.

### 1.  Counts I-IV

In Maryland, civil claims — including breach of contract, quantum meruit, unjust enrichment, and fraud — have a three-year limitations period. Md. Code Ann., Cts. & Jud. Proc. § 5-101; *J.E. Dunn Constr. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F.Supp.3d 593, 612 (D.Md. 2015) (noting that a three-year statute of limitations applies to breach of contract claims); *Chevron U.S.A. Inc. v. Apex Oil Co., Inc.*, 113 F.Supp.3d 807, 822 (D.Md. 2015) (noting that three-year statute of limitations applies to quantum meruit claims); *Cain v. Midland Funding, LLC*, 475 Md. 4, 39 (2021) (applying three year-state of limitations to unjust enrichment claim "that seeks the remedy of restitution of money").

"[T]he statute of limitations for a breach of contract claim usually begins to accrue on the date of the alleged breach." *Chevron*, 113 F.Supp.3d, at 819.    In Maryland, "the statute of limitations does not begin to accrue on a claim until the plaintiff knows or should know of the potential claim." *Dual Inc. v. Lockeed Martin Corp.*, 383 Md. 151, 167 (2004). Because Plaintiffs' claims for breach of contract (Count I), quantum meruit (Count II), unjust enrichment (Count III), and fraud (Count IV), are premised on

Brothers' alleged failure to pay several invoices, the accrual date for all these claims is the date Plaintiffs knew or should have known of the alleged breach.

Brothers alleges the following invoices fall outside the three-year statute of limitations period: (1) Invoice No. 160 – November 28, 2018; (2) Invoice No. 168 – January 11, 2019; (3) Invoice No. 180 – April 16, 2019; and (4) Invoice No. 189 – September 27, 2019, September 30, 2019. (ECF No. 32, at 14). Brothers asserts that HCD's claims relating to those invoices—including HCD's claims for 10% holdbacks that apply to those invoices—should be dismissed as time-barred by the statute of limitations.

Because the 2018-2019 invoices clearly fall outside of the three-year statute of limitations period, the claims related to them under Counts I, II, and III will be dismissed. Brothers' request to dismiss the claims relating to the 2018 and 2019 invoices under Count IV is moot.

### 2.    Counts V and VI

Claims under the MWPCL and the DCWPL are each subject to a three-year statute of limitations. Md. Code Ann., Cts & Jud. Proc, § 5-101); D.C. Code § 32-1308(c)(1)). Plaintiffs do not contest that several of the invoices referenced in the second amended complaint are time barred, and instead seek to use the 2018 and 2019 invoices as "prior acts as background evidence to support

21

[Mr. Hector's] timely claim[s]" under the MWPCL.[5]  (ECF No. 33, at 15).

Plaintiffs filed suit on January 17, 2024.  (ECF No. 1). Therefore, it "is clear from the face of the complaint" that Mr. Hector's claims for wages before January 17, 2021, are time-barred. *See Johnson v. Silver Diner, Inc.*, No. 18-3021-PWG, 2019 WL 3717784, at *6 (D.Md. Aug. 7, 2019) (citing *J&J Sports Prods., Inc. v. Pro St. Shop, LLC, t/a Pro St. Cafe*, No. 18-1000-DKC, 2019 WL 3290161, at *2 (D.Md. July 22, 2019) (quoting *Long v. Welch & Rushe, Inc.*, 28 F.Supp.3d 446, 456 (D.Md. 2014))).  Those claims are dismissed.  *See J&J*, 2019 WL 3290161, at *2.  Plaintiffs may still use the 2018 and 2019 invoices as "prior acts . . . to support [Mr. Hector's] timely claim[s]" under the MWPCL so long as they are relevant and admissible into evidence.  *Johnson*, 2019 WL 3717784, at *6 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 102 (2002)).

**3.  Count VII**

The FLSA provides that actions for alleged violations "shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the

---

[5] Plaintiffs do not contest that the statute of limitations has expired for several 2018 and 2019 invoices under the DCWPL. Plaintiffs also make no mention of a desire to use the 2018 and 2019 invoices for any purpose as it relates to Mr. Hector's claims under the DCWPL.

cause of action accrued." 29 U.S.C. § 255(a). As such, the applicable statute of limitations for claims under the FLSA turns on whether the allege violation was "willful." Brothers argues that Plaintiffs have not alleged any "willful" violations and therefore their claims under the FLSA are subject to a two-year statute of limitations. (ECF No. 32-1, 15). Plaintiffs seemingly argue that the three-year statute of limitations applies because the second amended complaint is largely based on fraudulent conduct from Brothers amounting to willful violations. (ECF No. 33, at 15).

To establish willfulness, Plaintiffs must show "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

While not specifically written in Count VII, Plaintiffs repeatedly allege Brothers' failure to pay wages owed was willful, (ECF No. 31, ¶¶ 35, 36, 37, 80, 93, 96), and the conduct that the FLSA claim is premised on is identical to that of several other claims. Brothers has not shown that the facts clearly support its assertion that Plaintiffs cannot show willfulness at this stage of the litigation.

**IV.  Conclusion**

For the foregoing reasons, Defendant Brothers' motion to dismiss will be granted in part and denied in part.  A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge
